IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEVEN JOHN BUSTI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 1:11-CV-01029- SS |
| | § | |
| PLATINUM STUDIOS, INC., et al. | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Platinum Studios, Inc., Scott Mitchell Rosenberg, Universal Pictures, a division of Universal City Studios LLC, and Dreamworks II Distribution Co., LLC ("Defendants"), move to dismiss this action for failure to state a claim upon which relief can be granted as authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.
INTRODUCTION**

Plaintiff's newly-filed Third Amended Complaint for Copyright Infringement ("Complaint") addresses the limitations problems of his previous Complaint, but fails to address the numerous other deficiencies and fails to state a claim upon which relief can be granted. In fact, the Complaint, and documents referred to within the Complaint, which Defendants attached to their previous Motion to Dismiss and which are incorporated herein, affirmatively show that the asserted cause of action for copyright infringement is deficient, does not allege the elements of a cognizable claim for copyright infringement, and requires dismissal. Plaintiff's claim is simple — he claims that because Plaintiff's Comic Book and Defendants' Graphic Novel and

Film all have the general themes of cowboys and aliens "coexisting" in the old west, a large alien invader, and cowboys putting aside their differences with the local Native Americans to repel the alien invader, Defendants' fully developed one hundred (100) page Graphic Novel and two (2) hour film infringed Plaintiff's nine (9) page first installment of his comic book story. As to the Graphic Novel only, Plaintiff also claims three slightly more specific, although no more protectable, elements.

Plaintiff alleges that in 1995 he published a comic book with a short comic story called "Cowboys and Aliens"[1] (Plaintiff's "Work" or "Comic"). The self-published story involved a generic cowboy character, two generic Native American characters, and a giant alien monster named Morguu, who recently arrived on earth from the "Voltan Empire" in a classic round UFO disc — the most cliché of spaceships. In the Comic, which is only nine pages long, the alien spaceship is discovered by both the cowboy and the Native Americans, both of whom — after their respective brief struggles with the alien — set off to make plans to protect their respective people and/or defend against the alien. The story ends as they set off on their respective missions to protect their people.[2] That is the end of the Comic, and there were no future works.[3]

Plaintiff registered his Comic with the U.S. Copyright office on September 29, 2011, approximately sixteen years after first publication, and, conveniently, just after Defendants'

---

[1] *See* April 1, 1995 edition of Bizarre Fantasy #1, attached to Defendants' Motion to Dismiss for Failure to State a Claim [#19] as Exhibit A (listing edition as April 1, 1995). *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000) (documents attached to motion to dismiss may be considered if referenced in plaintiff's complaint and central to its claims).
[2] Although Plaintiff claims that one of the "similarities" between his work and Defendants' works is the plot element of cowboys and Native Americans putting aside their differences to repel the alien invaders, that element does not actually exist in Plaintiff's work.
[3] The Comic ends with a note that the "Next Issue" will be "Showdown", but Plaintiff has not alleged infringement in anything other than the Bizarre Fantasy #1 and has not presented evidence of registration of any other continuation of the story (or evidence that a continuation of the story exists).

movie "Cowboys and Aliens" came out in theatres.[4] Plaintiff alleges that Defendants Scott Rosenberg ("Rosenberg") and Platinum Studios, Inc. ("Platinum") (together, the "Platinum Defendants") infringed the copyright in his Comic by: 1) producing a graphic novel series in October of 2006 titled "Cowboys & Aliens" ("Graphic Novel") that was republished in 2011; and 2) creating an unauthorized "derivative work" of his Comic — a 2011 film (the Film"). In his Complaint, Plaintiff alleges striking similarity with respect to the Graphic Novel based on three non-copyrightable elements: 1) an alien spaceship zooming overhead the main cowboy character; 2) the spacecraft's being discovered by Apache Native Americans, who are then attacked; and 3) an alien commander who allegedly looks similar to Plaintiff's Morguu character.[5] Plaintiff also alleges that all three works contain the "striking similarities" of cowboys coexisting in the same universe with the "alien invaders landing during the old west time period" and cowboys and Native Americans putting aside their differences to repel the alien invaders and that his Comic and the Film both have "large, muscular, and reptilian alien invaders."[6]

## II.
## STANDARD GOVERNING THE MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted," and Defendants request that this Court grant such relief herein. The United States Supreme Court has held that a plaintiff must give a defendant fair notice of a cognizable claim, with sufficient factual matter to state a claim for relief that is

---

[4] Though the registration is normally *prima facie* evidence of originality, failure to register within five years after the first publication eliminates the presumption of validity. *See, e.g., Thimbleberries, Inc. v. C & F Enterprises, Inc.*, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001) (noting that when registration is not within five years of the date of first publication, the presumption of validity of the copyright is eliminated, and the judge has the discretion to decide "whether plaintiff has established the requisite originality and protectability of its work").
[5] *See* Complaint, ¶ 18.
[6] *See* Complaint, ¶ 18, 20.

plausible on its face.[7]  When the allegations of the complaint, taken as true, do not create a claim for entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[8]  <u>A claimant must plead *facts* establishing its entitlement to relief.</u>  A legal conclusion couched as a factual allegation need not be accepted as true in a motion to dismiss.  Moreover, the mere recitations of the elements of the cause of action are not sufficient.[9]  When the facts are equally consistent with non-liability, the plaintiff fails to state a claim.[10]  Furthermore, on a Rule 12(b)(6) motion, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."[11]

In fact, "[w]hen the original work and the allegedly infringing copy are submitted with the pleadings and available to the court for side-by-side comparison, substantial similarity can be decided on a Rule 12(b)(6) motion to dismiss."[12]  Thus, it is entirely appropriate for a court to dismiss a claim "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar."[13]  Plaintiff's Complaint falls squarely within these parameters and should be dismissed.

---

[7] *Bell-Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007).
[8] *Id.* at 558.
[9] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombley*, 550 U.S. at 555.
[10] *Twombley*, 550 U.S. at 570; *Iqbal*, 556 U.S. 662. *See also, Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).
[11] *Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir. 2001).
[12] *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787 (S.D. Tex. 2009).  True and correct copies of the following works were attached to Defendants' first Motion to Dismiss for Failure to State a Claim [#19] previously filed with this Court and are incorporated herein: a copy of Plaintiff's Work was attached as Exhibit A, a copy of the article in *Comic Shop News* was attached as Exhibit B, a copy of the allegedly infringing Graphic Novel was attached as Exhibit C, and a copy of the allegedly infringing film was attached as Exhibit D.  Plaintiff's original work (Exhibit A) and the allegedly infringing work (Exhibits C and D) are clearly referred to in the Third Amended Complaint and are central to Plaintiff's claims and, therefore, may be considered in evaluating this Motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308, 322 (2007) (court may consider documents incorporated into the complaint by reference); *see also, Collins v. Morgan Stanley Dean Witter*, 224 F.3d at 498-99 (documents attached to motion to dismiss may be considered if referenced in plaintiff's complaint and central to its claims).
[13] *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010).

## III.
## SUMMARY OF THE ARGUMENT

Despite being given an opportunity to re-plead to cure the previous pleading defects, Plaintiff has failed to do so — instead simply adding a few sentences to his previous complaint that allege nothing more than scenes a faire and other generic elements that are not protectable and do not satisfy the requirements for pleading a claim of copyright infringement; therefore, this Complaint, which still fails to state a claim upon which relief can be granted, should be dismissed as efficiently as possible. Plaintiff wrote a Comic over fifteen years ago that he decided to register with the Copyright Office only after a film with the same title was distributed in movie theatres. Plaintiff has failed to allege any copying and/or actual access to the Comic and failed to allege any copyrightable elements that he believes were copied, or are substantially similar, in either the Graphic Novel or the Film.

## IV.
## REVIEW AND COMPARISON OF THE WORKS

The facts recited below are based on true and correct copies of Exhibits A-D that were attached to Defendants' previously filed Motion to Dismiss for Failure to State a Claim [#19]. As discussed above, Exhibits A, C, and D are the works at issue, and Exhibit B is a copy of *Comic Shop News*. In addition, Exhibit E attached to the Defendants' previously filed Motion to Dismiss for Failure to State a Clam [#19] is the case of *Power v. Universal Studios, Inc.,* No. 97-6407 (C.D. Cal. 1998) in which the Court previously ruled that the general plot idea of aliens struggling with humans in an Old West time frame is not protectable by copyright. The Court specifically noted that "an alien invasion and the crash of a spaceship on Earth are nothing more than general plot ideas. As a result, they are not entitled to copyright protection." All of the above-referenced Exhibits (A-E) are incorporated herein for purposes of the current Motion to Dismiss for Failure to State a Claim.

A. **SUMMARY OF THE WORKS**

A review of the Comic and the Graphic Novel and Film show that the neither the Graphic Novel nor the Film is substantially similar to the Comic. Similarly, the promo in *Comic Shop News*, which simply shows one panel of the Comic, is not substantially similar to either of Defendants' works. In order to assist the Court in reviewing and comparing the three works, Defendants include this summary of the three works.

    1. **The Comic — Plaintiff's Work**

In the Comic (a "retro-comic"), while out on a trail ride, the generic cowboy Harding finds the alien ship with one lone alien.[14] Two Native Americans also happen upon the ship on a general outing.[15] The purpose of the alien's arrival on Earth is explained as to "enslave" the world and to "claim this planet" and to make Earth his "latest conquest."[16] The alien, Morguu, is intent on enslaving and killing humans for the purpose of conquering Earth and briefly battles the two Native Americans and, then, the cowboy.[17] After escaping the alien, the Native Americans return to their village to alert their medicine man and get aid for one of the injured Native Americans.[18] Destroying Morguu's weapon, the cowboy races off to "warn the townsfolk."[19] The cowboy hatches a plan to defeat Morguu by burying his spaceship under dynamite, but we never learn the outcome of the plot.[20] The two groups of humans never form a plan to work together to defeat the alien and we never learn if the alien is defeated — and/or the old west saved.[21] There is no more; that is the end of the story.[22]

---

[14] *See* Exhibit A.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

### 2. The Graphic Novel

In contrast, the Graphic Novel (which has a much more contemporary feel) begins with a description of the discovery of the New World and the settlement of the American Frontier by Europeans.[23] As this chapter in American history is recounted, a fictional parallel story of an alien invasion with similar goals and motives is laid out, resulting in the landing of an alien spacecraft on Earth in the American Old West in 1873.[24] The tale begins in earnest as a cowboy (Zeke) and his companion (Verity), who were hired to protect a caravan, are ambushed by a band of Apaches.[25] The battle is interrupted by an alien spaceship crashing into Earth.[26] Unlike in Plaintiff's Work, the crash is an accident, caused by a malfunction in the spacecraft.[27] The aliens in the Graphic Novel, large green creatures with ram-like horns, are previously unaware of the Earth, but decide to invade and settle the planet.[28] Unlike in the Comic, the two previously adverse groups (cowboys and Apaches) join forces to fight the alien threat, and the fighters steal weapons from the aliens.[29] A female alien defects and allies herself with the human fighters and a love story develops between her and Zeke.[30] A love story also develops between Verity and the Apache warrior, Warhawk.[31] One of the settlers betrays the human fighters, hoping for mercy from the aliens, and the betrayal leads to the capture of the humans who are to be executed, but are spared as another band of Apaches arrive on flying horses and the fighters defeat the aliens.[32] In the end it is revealed that the alien defector is really a member of a group of resistance fighters

---

[23] *See* Exhibit C.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

who are engaged in a struggle against the species that attempted to invade the Earth.[33]  *As shown,* the Graphic Novel is distinctly *dissimilar* to Plaintiff's Work.

### 3. The Film

The Film begins with an outlaw who has amnesia waking up in the desert.[34]  The outlaw has a mysterious bracelet strapped to his wrist, which later turns out to be a weapon that he stole from the aliens.[35]  The outlaw had apparently been kidnapped by aliens, although he does not remember this until later.[36]  The outlaw stumbles into a nearby small town and fights with a town bully and, as the plot progresses, the aliens attack the small town.[37]  None of this is in the Plaintiff's Work.[38]  The Film aliens are shown to be invading Earth for the purpose of stealing all of the Earth's gold.[39]  They kidnap citizens from the town and perform deadly experiments on them, which is not in the Plaintiff's Work.[40]  The outlaw cowboy teams up with a local rancher, a minister, some ranch hands, the Sheriff, the town doctor, a band of thieves, and a mysterious woman.[41]  None of these characters is in the Plaintiff's Work.[42]  While on their quest to defeat the alien invaders (which they call "demons" because they don't know what an alien is), the posse runs into a band of Native Americans, and a band of thieves, both of whom join the quest.[43]  The mysterious woman later turns out to be from another planet — her people were destroyed by the invaders, and she has come to Earth to prevent the same thing from happening here.[44]  Hordes of smaller alien ships that attack humans are ultimately connected to a giant monolithic mothership

---

[33] *Id.*
[34] *See* Exhibit D.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *See* Exhibit A.
[39] **See** Exhibit D.
[40] *Id.*
[41] *Id.*
[42] *See* Exhibit A.
[43] *See* Exhibit D.
[44] *Id.*

the size of a skyscraper, which is planted deep into the Earth and towering into the sky.[45] The now very large posse finds the ship and fights the aliens. The story ends with the mysterious other-worldly woman using the outlaw's bracelet weapon to blow up the mother ship.[46] The ship explodes just as it is blasting off into space.[47] Again, none of these plot elements appears in Plaintiff's Work.[48]

## V.
## ARGUMENT

The elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[49] Only elements of the work that are original can be protected by copyright. "[T]he second element requires the plaintiff to prove that the defendants had access to the plaintiff's copyrighted work and that there is substantial similarity of *protected elements* between the two works."[50] Substantial similarity may often be decided as a matter of law on a motion to dismiss.[51]

### A.    Plaintiff Has Not Alleged or Established the Essential Element of Copying

Copying is an essential element of copyright infringement.[52] A copyright owner does not own a monopoly on all expressions similar to his; rather, the copyright confers a right of control only over works that are derived from the copyrighted work.[53] Accordingly, if the allegedly infringing work was created independently, there is no copyright violation.[54] To demonstrate "copying," Plaintiff must plead and prove either actual copying or factual copying. Because

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *See* Exhibit A.
[49] *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).
[50] *Id.*
[51] *Id.*
[52] *Feist Publications, Inc.*, 499 U.S. at 361.
[53] *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir. 1981).
[54] *See, e.g., Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108, 116 (1st Cir. 2007) (holding that an independently created work was not an infringement of the copyright of an identical work).

Plaintiff has not alleged actual copying (because there was none), his claim rises and falls on factual copying. Factual copying can be inferred from (1) proof the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative or striking similarity.[55] "If the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access."[56] Plaintiff has not sufficiently alleged access, and the Court can and should determine a lack of probative and/or striking similarity.

1. **Plaintiff Has Not Alleged Access by Defendants**

Plaintiff has not alleged any facts demonstrating that Defendants had access to the Comic, but instead simply alleges his Comic was "published internationally and widely available" (Complaint, ¶23) and that a preview of his "Cowboys and Aliens" story appeared on an eight-page obscure free weekly publication, with a circulation of about 30,000, given away as a promotional tool that also included an article (likely derived from a press release) about the sale of Malibu Comics (founded by Defendant Rosenberg) to Marvel Entertainment.[57] But, the alleged "international distribution" of Plaintiff's Comic — which was *self published*[58] — does not give rise to an inference that Rosenberg ever saw or had any knowledge of the Comic.[59] Similarly, Plaintiff has provided no evidence or even allegation that Rosenberg ever saw or read the article in *Comic Shop News* promoting Bizarre Fantasy # 1. To determine access, the Court considers whether the alleged infringer had a reasonable opportunity to view the copyrighted work.[60] Simple conjecture or speculation about access will not suffice.[61] Neither the self-

---

[55] *Peel & Company Inc. v. The Rug Market,* 238 F.3d 391, 394 (5th Cir. 2001).
[56] *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978).
[57] *See* Issue #388 of *Comic Shop News*, attached as Exhibit B.
[58] *See* Exhibit A to Defendants' Motion to Dismiss for Failure to State a Claim [#19], back of front cover; Exhibit B.
[59] *See Peel & Co., Inc.*, 238 F.3d at 394-95; *see also, Armour v. Knowles,* 512 F3d 147, 155 (5th Cir. 2007).
[60] *See Peel & Co., Inc.*, 238 F.3d at 394-95.
[61] *Id.*

publication of Plaintiff's Work nor the existence of one article about the Work constitutes evidence of access.[62] "A bare possibility" of access "will not suffice" for an infringement claim.[63] Accordingly, even the bare facts alleged do not describe access to the Comic.

### 2. There is No Striking (or Probative) Similarity Between the Works

In the absence of evidence of access, Plaintiff claims that the Graphic Novel and "accompanying feature film" are "so substantially similar . . . as to show copying."[64] But, the alleged similarities come nowhere close to meeting the legal definition of "strikingly similar" (or, for that matter, probatively similar).[65] Plaintiff alleges only vague similarities between the Graphic Novel and Plaintiff's Work — regarding characters (Native American Apaches and the alien commander) and plot ("the spacecraft zooming overhead the main cowboy character," the spacecraft being discovered by Native American warriors who are then attacked, and cowboys and aliens coexisting and/or cowboys putting aside their differences to work with the Native Americans).[66] These are generic plot elements that do not demonstrate striking similarity.[67]

Striking (or probative) similarity looks at the two works as a whole to determine whether there are any similarities between the two works "that, in the normal course of events, would not

---

[62] Even if Rosenberg had read the article, the nearby article on Bizarre Fantasy comics talks generally about the launching of the comic book series (which failed within months) and, in relation to Plaintiff's Work, states only the title of the story and the fact that the story "is a Western-sf tale that features cowboys and aliens as Morguu, Conquerer of Worlds, comes to the old West to launch his invasion." *See* Exhibit B. There is also a picture of the cover of Bizarre Fantasy, showing Morguu holding a cowboy in the air, much like the character King Kong held actress Faye Wray in the movie King Kong; but, there is no similar scene in Defendants' Film or Defendants' Graphic Novel. Thus, even if Rosenberg had read the article, which he did not, it would only prove access to Plaintiff's idea, not to Plaintiff's Work.
[63] *See Peel & Co., Inc*., 238 F.3d at 394-95; *see also, Armour v. Knowles,* 512 F3d 147, 155 (5th Cir. 2007).
[64] *See* Complaint, ¶23. Although Plaintiff uses the term "substantially similar" in paragraph 23 — the one place he alleged substantial similarity — it appears he is actually making an allegation of *factual* copying (or probative or striking similarity). Nevertheless, as discussed below, Plaintiff has also not adequately pled *substantial* similarity or *actionable* copying.
[65] Even if Plaintiff had demonstrated access, he would still need to demonstrate at least probative similarity to sufficiently allege factual copying. He has demonstrated neither probative nor striking similarity.
[66] *See* Complaint, ¶20.
[67] *See. e.g., Positive Black Talk, Inc. v. Cash Money Records,* 394 F.3d 357 (5th Cir. 2004) (in determining striking or probative similarity, one should look at whole of both works to determine if there are similarities between their constituent parts that would not arise independently, therefore, suggesting actual copying of the work).

be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work."[68] The four alleged similarities do not demonstrate striking similarity of the works — that, based on a review of the two works, the Graphic Novel has sufficient similarities that would not exist absent copying or that the works are adequately similar to establish appropriation. [69] An independent review of the works leads to the same conclusion of non-similarity.[70] Finally, the Graphic Novel has a modern, flashy feel and style, while, according to Busti's own description of his self-published Flashback Comics title "Bizarre Fantasy" (the Comic at issue), the comics "capture the look and feel of the classic sci-fi/monster comics from the 50's and 60's."[71]

### B.  There is No Substantial Similarity in Copyrightable Elements of the Comic

Even if Plaintiff had sufficiently pled (and could prove) factual copying, Plaintiff has failed to state a claim because there is no allegation of *substantial* similarity so as to constitute *actionable* copying.[72] Plaintiff has claimed his Work and the Graphic Novel have the following similar plot elements (which he does not claim are *substantially similar* but only *strikingly similar*):  1) an alien spaceship zooming overhead the main cowboy character, 2) the spacecraft being discovered by Native American Apaches, and 3) an alien commander who is similar to the alien in the Graphic Novel.[73]  Plaintiff also claims both works include the "blending of two genres" with cowboys and aliens coexisting in the old west and traditional nemeses cowboys and

---

[68] *Positive Black Talk, Inc. v. Cash Money Records,* 394 F.3d at 370.
[69] Additionally, at least one of the alleged similarities does not even exist.  Plaintiff's Comic does not show the cowboys "putting aside their differences" to work with the Native Americans to repel the aliens.  In fact, while both independently attempt to get away from the immediate harm to themselves threatened by the alien, there is no indication they are planning to work together — or "put aside their differences" — to repel the alien.
[70] *See* Section IV.
[71] *See* Exhibits A, B, and C.
[72] *See. e.g., Jane Galliano and Gianna, Inc. v. Harrah's Operating Co., Inc.,* 416 F.3d 411, 413 (5th Cir. 2005).
[73] *See* Complaint, ¶18.

Native Americans putting aside their differences to repel the alien invaders. But, generic plot elements are not protected by copyright.[74]

The elements alleged to be infringed are not original and not protectable. Originality is a "prerequisite for copyright protection."[75] The alien commander is simply a large monster, not unlike countless other large monsters that appear in all forms of publications and entertainment vehicles. The claimed element of an alien spaceship zooming overhead is an inevitable element in a plot where a cowboy encounters an alien, and, although alleged as strikingly similar to Plaintiff's Work, the only panel in the Comic with something zooming over the cowboy's head does not show a spaceship at all.[76] A written work such as a book or a story is not infringed simply because there are similar plot elements. Such a loose similarity "is merely a general idea and not a form of literary expression protected against copying."[77] The mere fact that Plaintiff's Work and Defendants' works may both include cowboys and aliens in the same story, an alien spaceship zooming overhead, a spacecraft being discovered by Indians, and/or a similar alien commander does not demonstrate the copying of copyrightable elements.[78] Because Plaintiff has not alleged copying of any *protectable* elements, he has failed to state a claim upon which relief can be granted.

---

[74] *See Randolph*, 634 F. Supp. 2d at 789 (plot is not protectable by copyright); *see also*, 17 U.S.C. §102(b).
[75] *See Feist Publications, Inc*, 499 U.S. 340 (1991).
[76] *See* Exhibit A.
[77] *Doody v. Penguin Group (USA) Inc.*, 673 F. Supp. 2d 1144, 1156 (D. Haw. 2009).
[78] For example, one court found that an allegedly infringing book did not infringe on another book when the plot similarity was that the characters in both works "are kidnapped, driven over rough terrains for several hours and past a sizeable city to a mansion, and held by a wealthy Mongolian villain who attempts to force his captives to help him." *Doody,* 673 F. Supp. 2d at 1156. In another case, a book and subsequent movie with similar "scenes a faire" to an earlier book, including "the defeat of Medusa, the defeat of the Hydra, the use of flying shoes, conversations among the gods" and "sports contests, school classrooms, flirtation between boys and girls" was not found infringing because the similarities related to non-protectable elements of the works and the similarities in the works were greatly outweighed by the differences. *DiTocco v. Riordan,* 2011 WL 4373943 (S.D.N.Y. Sept. 20, 2011).

### 1. A review of the various works show there is no substantial similarity

Plaintiff can neither plead nor prove substantial similarity and a review of Plaintiff's Work and Defendants' works demonstrate two very different stories — certainly not the substantial similarity required for an infringement claim. To the extent Plaintiff claims that the allegedly "strikingly similar" elements also constitute substantial similarity, it is clear from a review of the Complaint and of the works that Plaintiff has not pled copying of constituent elements of the Work that are original. Simply stating the legal conclusion that there is copying without stating any basis for such a conclusion is not sufficient to put a party on notice of the basis for the claim.[79] As discussed in the summary of the facts regarding Plaintiff's Work and the allegedly infringing Graphic Novel and Film in Section IV., it is clear that the storylines and characters for the Comic and for the Graphic Novel and Film are distinctly different and that there are almost no similarities between Plaintiff's Work and Defendants' works, with the possible exception of a few *scenes a faire* and other uncopyrightable elements.[80]

### 2. Neither the Idea of Cowboys and Aliens Nor the Name Cowboys and Aliens is Protected by Copyright

An idea is not protected under the copyright laws. *See* 17 U.S.C. §102(b). In no case does copyright protection for an original work of authorship extend to any idea, concept, or principle. Thus, Plaintiff's claim that Defendants copied Plaintiff's "idea" for a work about cowboys and aliens — or the "blending of [the]two distinct genres" — does not give rise to a claim for copyright infringement. A copyright claim can be dismissed on the lack of an allegation of a specific act of infringement.[81] "The Copyright Act does not protect fragmentary

---

[79] *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 652, 129 S.Ct. 1937 (2009).
[80] *See* Section IV.
[81] *See Taylor v. IBM*, 54 Fed. Appx. 794 (5th Cir. 2002).

words or short phrases."[82]  "Moreover, where all that has been copied is plaintiffs' idea, there is no copyright infringement."[83]  The simple idea of a story involving the interaction of cowboys and aliens is not protectable.[84]  In fact, the Central District of California has specifically ruled that the "general plot idea" of  "aliens struggling with humans in an Old West (1880s) time frame … is not protectable by copyright," noting that "an alien invasion and the crash of a spaceship on Earth are nothing more than general plot ideas.  As a result, they are not entitled to copyright protection."[85]  An "overlapping theme" is an unprotectable idea, if "the works expressed that idea through different settings, themes, moods, and characterizations."[86]  "Stock" characters, or superficial characters that are only weakly developed are not protectable.[87]  As Judge Learned Hand wrote, "[T]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly."[88]

The characters in the Plaintiff's Comic are weakly developed, if at all, and are not protected simply because they are "cowboys," "Apaches" and/or a large monster.  Plaintiff's Complaint, and the allegations within it, indicates that what Plaintiff is really alleging is the copying of the idea of cowboys and aliens and/or the name "Cowboys & Aliens."  But "[o]ne cannot claim copyright in a title."[89]  Similarly, the plot idea of having cowboys and aliens in the

---

[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Power v. Universal Studios, Inc.*, No. 97-6407 (C.D. Calif. November 9, 1998) at 24.  A true and correct copy of the *Power* decision was attached to Defendants' Motion to Dismiss for Failure to State a Claim as Exhibit E for the Court's convenience.  Additionally, the idea of a cowboy sci-fi story or cowboys coexisting with alien creatures is not a novel concept and has been around since at least 1935, when Gene Autry starred in the serial "The Phantom Empire."
[86] *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 566 (S.D.N.Y. 2009).
[87] *Id.*
[88] *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930).
[89] *Arthur Retlaw & Associates, Inc. v. Travenol Laboratories, Inc.,* 582 F. Supp. 1010, 1014 (N.D. Ill. 1984); *see also, Kirkland v. Nat'l Broad. Co., Inc.,* 425 F. Supp. 1111, 1114 (E.D. Pa. 1976) *aff'd*, 565 F.2d 152 (3d Cir. 1977) ("a copyright in literary material does not secure any right in the title itself").  A title can be protected by trademark rights, but Plaintiff has not brought a trademark claim and, has not alleged (nor provided any evidence) that he owns the trademark to the word mark "Cowboys & Aliens," which is owned by Defendant Platinum Studios.

same story or setting or of having cowboys and Native Americans put aside their differences to "repel the alien invaders" is not protectable — and, as importantly, is not even present in Plaintiff's Work[90].

## VI.
## PRAYER

For all of the above reasons, Defendants respectfully request that the Court dismiss Plaintiff's suit against Defendants for Plaintiff's failure to state a claim upon which relief can be granted. In the alternative, Defendants respectfully request that the Court find that Defendants are entitled to judgment as a matter of law and dismiss Plaintiff's suit in its entirety with prejudice.

Respectfully submitted,

HAYNES & BOONE, LLP

By:_____/s/__Catherine L. Robb_____
    Laura Lee Prather
    State Bar No. 16234200
    Catherine L. Robb
    State Bar No. 24007924

600 Congress Avenue, Suite 1300
Austin, TX  78701
Telephone:  (512) 867-8400
Telecopier:  (512) 867-8470

ATTORNEYS FOR PLATINUM STUDIOS, INC., SCOTT MITCHELL ROSENBERG, UNIVERSAL PICTURES, INC., D/B/A UNIVERSAL STUDIOS, and DREAMWORKS II DISTRIBUTION CO., LLC

---

[90] Again, there is no indication in the Comic that the cowboy and the Native Americans intend to set aside their differences to work together to repel the alien invader. And, as discussed previously, while the cowboy sets off to warn the townsfolk, the Native Americans set off to warn their tribe, thus indicating both groups are looking out for their own. In addition, in the Graphic Novel, the story is not as simple as cowboys and Native Americans banding together to repel aliens, as at least one alien switches sides to try to save the humans and at least one human betrays his own people.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served on the following parties via e-service and/or certified mail, return receipt requested, this 10th day of July, 2012:

Joshua G. Jones  
The Law Office of Joshua G. Jones  
401 Congress Avenue, Suite 1540  
Austin, TX  78701

                                                  ____/s/__Catherine L. Robb_____  
                                                  Laura Lee Prather/Catherine L. Robb