**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **STEVEN JOHN BUSTI,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO.** |
| | § | **1:11-CV-01029- SS** |
| | § | |
| **PLATINUM STUDIOS, INC., et al.** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS FOR FAILURE TO STATE A**
**CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Platinum Studios, Inc., Scott Mitchell Rosenberg, Universal Pictures, a division of Universal City Studios LLC, and Dreamworks II Distribution Co., LLC ("Defendants"), file this Reply to Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, and would show as follows:

**I.**
**INTRODUCTION**

Plaintiff's response to Defendants' Motion to Dismiss continues to make assertions that are contradicted by the facts in evidence before this Court, still fails to demonstrate how Plaintiff has adequately alleged the element of substantial similarity, and, despite, having been given an opportunity to re-plead to cure previous pleading defects, now attempts (in the Response to the Motion to Dismiss) to introduce new evidence to shore up Plaintiff's claim of access, which should not be considered on a Motion to Dismiss. As discussed previously, of the five alleged "similarities" between Plaintiff's work and Defendants' works, three are not even actual similarities (that is, they do not exist in at least one of the two sets of works) and none is

sufficient to demonstrate actionable copying.  Furthermore, contrary to Plaintiff's assertions, Defendants do not argue that Plaintiff's Comic Book itself should not be protected by copyright, but rather that the elements that Plaintiff identifies as being infringed, *e.g.*, the idea of cowboys and aliens interacting in the Old West, Native Americans coming upon the spacecraft first, and, aliens that are large and green, etc., are not protectable and do not support a claim for infringement.

## II.
## SUMMARY OF THE ARGUMENT

Despite being given an opportunity to re-plead to cure the previous pleading defects, with the exception of now alleging a claim based on a later (non-time barred) version of the Graphic Novel, Plaintiff has failed to do so.  Plaintiff's Response simply asserts the same unprotectable — and in some cases, dissimilar — elements as previously alleged by him, while also adding late-filed evidence outside of the pleadings that should not be considered by this Court on a Motion to Dismiss.  Contrary to Plaintiff's argument, it is not just that the facts alleged by Plaintiff cannot be proven, but that the facts alleged do not state a claim upon which relief can be granted.  Even assuming everything Plaintiff has asserted is true, the facts and contentions simply do not state a claim for copyright infringement because Plaintiff does not adequately plead either access or actionable copying.

When, as here, the allegations of the complaint, even when taken as true, do not create a claim for entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[1]  Furthermore, on a Rule 12(b)(6) motion, "a court need not accept as true allegations that contradict matters properly

---

[1] *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 558 (2007).

subject to judicial notice or by exhibit."[2]   Therefore, even taking the allegations in Plaintiff's Complaint as true, this Court should find that Plaintiff has failed to state a claim upon which relief can be granted and grant Defendants' Motion.

## III.
## PLAINITFF HAS STILL NOT PLED ACTIONABLE COPYING

Plaintiff has asserted no new arguments for why the generic *scenes a faire* that exist in his Comic Book, some — although certainly not all — of which also exist in the Defendants' works, constitute protectable elements that can sustain a claim for copyright infringement.

Plaintiff continues to argue that five "similarities" demonstrate substantial similarity between Plaintiff's Comic Book and Defendants' Graphic Novel and/or Film.  But, even where the alleged similarities do exist in Plaintiff's Work and at least one of Defendants' works, none of the alleged similarities qualifies as a substantial similarity so as to adequately plead a claim for copyright infringement.

1.   <u>Spacecraft Flying Over Cowboy</u>:   Plaintiff's first contention is that both the Graphic Novel and the Comic Book have a substantially similar scene of an alien spacecraft flying overhead the main cowboy character before landing.   While both works do have some scene of a cowboy and at least evidence of a spacecraft overhead, the two scenes are quite dissimilar.   The Graphic Novel does not include any scene in the narrative that shows an alien spacecraft flying overhead a cowboy character, although the cover of the Graphic Novel does have a picture of a cowboy riding his horse with a large spaceship overhead — which he appears to be aiming at in defense.   The closest any scene in the Comic Book comes to the Graphic Novel cover is a drawing of the main (and only) cowboy looking up at marks in the sky that make it appear as if a spacecraft has recently flown above the cowboy.   There is no scene

---

[2] *Sprewell v. Golden State Warriors,* 226 F.3d 979 (9th Cir. 2009).

showing the spaceship overhead the cowboy, the cowboy actually viewing the spaceship as it travels overhead, or of the cowboy battling the spaceship or being chased by it in any way. Thus, there is no similarity between these two scenes as would suggest substantial similarity. Additionally, even if there were similar scenes of cowboys with alien spacecraft overhead, such scenes do not demonstrate similarity of protectable elements. A spacecraft that is invading the Old West will inevitably fly over some parts of the Old West — including its inhabitants — prior to landing. This is nothing more than unprotectable ideas or *scenes a faire*.

2.   <u>Discovery of Spacecraft</u>:  Plaintiff next argues that in both Defendants' Graphic Novel and Plaintiff's Comic Book the spacecraft is first greeted by Apaches, which he claims qualifies as substantial similarity. While it is true that both works do include scenes where Apaches come upon a spacecraft, that idea for a scene is hardly original and does not qualify as a copyrightable element of a story where an alien spacecraft lands in the Old West and interacts with cowboys and Native Americans. The fact that the Native Americans come upon the spacecraft before the cowboys do in both works, rather than the other way around, hardly qualifies for protection. And, as seen from the two works themselves, the "discovery" scenes are quite different in the two works.[3] The idea of Apaches coming upon a spacecraft that has landed in the Old West is nothing more than an unprotectable idea or *scenes a faire*.

3.   <u>Vaporization</u>:  Plaintiff also asserts that in the Comic Book and the Graphic Novel the Apaches are vaporized by the Alien conquerors as the cowboy character watches and that this alleged scene qualifies as substantial similarity. This assertion fails for a number of reasons,

---

[3] For instance, in Plaintiff's Comic Book, after seeing the spacecraft land near some cliffs, the two Native Americans seek out the spacecraft to discover what it is and are attacked and harmed by the lone alien before escaping back to their village to recover and to warn their people. *See* Exhibit A to Defendant's Motion to Dismiss. In the Graphic Novel, the Native Americans are in the process of attacking a cowboy when the spacecraft crashes nearby, allowing the cowboy to escape, and leading to the death of three Native Americans who were unlucky enough to have been near the point of impact and who encounter the numerous aliens who emerge from the spacecraft. *See* Exhibit C to Defendants' Motion to Dismiss. The fact that the Native Americans are the first to actually encounter the alien(s) in both works is about the only similarity in that scene.

including the fact that, contrary to Plaintiff's claim, the Apaches are not "vaporized" in either work.  In the Comic Book, the Apaches are struck by some force coming out of a generic space gun and are forced to retreat — still in human form.  The Apaches return to their village to warn the others and to heal one of the Apache Indians (who, although, hurt, is not vaporized, but is alive and in solid human form).  In the Graphic Novel, while some of the Apaches are shot at and die from their injuries, they are also not "vaporized" and are visible as human corpses in the drawings.   The mere fact that the Indians are shot at and wounded by the aliens is not a protectable element.  Scenes of Native Americans in the Old West being shot at by invaders are clearly *scenes a faire* and not copyrightable or subject to infringement.

4. <u>Aliens</u>:  Plaintiff next claims that the aliens in all three works are extremely large, rock shaped, reptilian, and green, and that this "similarity" qualifies as substantial similarity.  A cursory review of the aliens demonstrates that they are not as similar as Plaintiff claims.  In fact, while there are many large predominantly green aliens in the Graphic Novel, the only alien in the Comic Book is yellow, not green.   And, in contrast to the Comic Book, the Graphic Novel involves not only the large green aliens, but many aliens in various forms and with various personalities.  Furthermore, in the Graphic Novel, the large green aliens do not appear rock shaped, but rather appear to have scales or plates, have horns and tusks, very sharp teeth, and tails and are about 1½ times as large as the humans and wearing armor.  The Comic Book alien is much less distinct, has no tail, tusks, or defined teeth, and only three fingers, is exponentially larger than the human characters, and appears to be wearing something akin to a Speedo.  Similarly, in the Film, the aliens are also distinct from Plaintiff's lone alien.  In the Film, the aliens are not rock-like, but rather very lean and defined, have shells or armor, appear to be a cross between reptilian and simian (the aliens appear to leap, and often run and climb on all

fours, like monkeys), and are only about 1 ½ to 2 times as large as the humans.[4]   A side by side comparison between Plaintiff's alien and the various aliens in Defendants' works shows that there is no substantial similarity between the two types of aliens.

     5.    <u>Cowboys and Indians Working Together</u>:   Plaintiff's last assertion is that his Comic Book and Defendants' works both include the idea of having cowboys and aliens in the same story or setting or of having cowboys and Native Americans put aside their differences to "repel the alien invaders."   But, as with the other alleged similarities, these alleged similarities are not protectable — and, as importantly, as to the claim of "putting aside their differences," not even present in Plaintiff's Work.   There is no evidence that the cowboys and Native Americans intend to put aside their differences in Plaintiff's Work.   In fact, the Native Americans clearly run off to warn their tribe[5], with no indication that they intend to help the cowboy who has come upon the alien as they are leaving.   There is similarly no expression in Plaintiff's Comic that the cowboys intend to put aside their differences with the Native Americans to help them. Furthermore, even if this element were present, the idea of traditional enemies coming together to combat a common foe is hardly original or significant enough to be the basis for a claim of infringement.   As discussed in Defendants' Motion, the basic idea of telling a story about aliens appearing in the Old West is not original to Plaintiff and is not protectable.   Again, Plaintiff has alleged nothing more than unprotectable elements and *scenes a faire.*[6]

---

[4]The aliens in the Film are also not wearing Morgu's Speedo.

[5] *See* page 10 of Exhibit A, Plaintiff's Work, to Defendants' Motion to Dismiss:  "Run like the wind Wotuck!! We must make it back to the village and warn *our* people."  (emphasis added).

[6] Furthermore, while the expression of such a story can certainly be unique (and is, as it relates to Defendants' fully fleshed out works), the basic idea of a work that depicts aliens in the Old West is not by itself unique or copyrightable, the Writers' and Producers' comments about the Film notwithstanding.

# IV.
## PLAINTIFF HAS STILL NOT SUFFICIENTLY PLED ACCESS

**A.**     **Plaintiff's new evidence should not be considered by this Court**

On a Motion to Dismiss for Failure to State a Claim, the Court should look only to the pleadings before the Court and may not consider extrinsic evidence.[7] Thus, Defendants object to and request that this Court decline to consider Plaintiff's Exhibits attached to his Response to Defendants' Motion to Dismiss. In light of the fact that Plaintiff has already been given one opportunity to re-plead his Complaint to cure his previous pleading defects, and that Defendants previously pointed out this pleading defect, which Plaintiff chose not to cure in his Amended Complaint, Plaintiff should not be allowed another bite at the apple by now being allowed to convert the Defendants' Motion to Dismiss into a Motion for Summary Judgment by attempting to introduce evidence outside of the pleadings. Nevertheless, should the Court convert the Motion to Dismiss to a Motion for Summary Judgment and consider Plaintiff's new evidence, Defendants ask that they be given ample opportunity to further respond and to introduce evidence of independent creation, as well as their own evidence of a complete lack of access and lack of originality and/or substantial similarity.[8]

**B.**     **The assertions pled by Plaintiff allege, at most, a remote possibility of access**

Neither the fact that a short article that *mentioned* Defendant Rosenberg appeared in the same edition of a small newsletter that also included an even shorter article on Plaintiff's company, with a reference to Plaintiff's Work (but not, actually, Plaintiff's Work)[9], nor Plaintiff's assertion that his self-published Comic Book was "widely disseminated" is sufficient

---

[7] *See* Federal Rule of Civil Procedure 12(d); *see also Scanlan v. Texas A&, Univ.,* 343 F.3d 533, 536 (5th Cir. 2003).
[8] Fed. R. Civ. P. 12(d).
[9] Although Plaintiff argues that Defendants were "likely to have viewed Plaintiff's comic by seeing it in the publication Comic Shop News," the evidence shows that Plaintiff's Comic Book was not actually in Comic Shop News. *See* Exhibit B to Defendants' Motion to Dismiss. The issue of Comic Shop News that Plaintiff points to for support only shows the cover of Plaintiff's Comic Book.

to demonstrate access.[10]   Realizing this, Plaintiff now attempts to introduce new evidence (not alleged in, or attached to, his Amended Complaint) to shore up his argument that he has sufficiently pled access and can defeat a Motion to Dismiss.  But, Plaintiff did not include any of these new assertions in his Amended Complaint — the pleading being tested by Defendants' Motion to Dismiss — nor attach to the Amended Complaint any evidence in support of such assertions.  In fact, despite being on notice that Defendants had already moved once on their assertion that Plaintiff had not pled anything more than a bare possibility of access (if that), Plaintiff chose not to amend his Complaint to add support to his argument that he could adequately plead access.  Thus, Plaintiff should not be allowed to attempt to introduce this "evidence" for the first time in a Response to Defendants' Motion to Dismiss.[11]

Additionally, even if this Court accepts Plaintiff's newly introduced evidence, the new evidence still fails to demonstrate access.[12]   The "interview" with Steve Oedekerk does not suffice to demonstrate that Defendants ever had access to Plaintiff's work.  Despite stating in the interview that his "next directorial film" would be called "Cowboys and Aliens", Mr. Oederkerk did not direct the Film at issue and is not a defendant in this lawsuit.[13]  And, although Plaintiff pointed out the statements of many of the head Writers and Producers of the Film in his Response, none of them admitted to ever viewing or copying Plaintiff's work — or even having any knowledge of it.

---

[10] Plaintiff initially claimed that his Comic was published "internationally" and now claims his Comic was "widely disseminated."  Plaintiff argues that these assertions should lead to the inference (in his favor) that Defendants viewed his Work, yet Plaintiff ignores the evidence that his Comic was self-published and that, despite stating in the self-published Comic Book that the story would continue in future episodes, it never made it past the first installment.

[11] *See* Federal Rule of Civil Procedure 12(d); *see also, Scanlan v. Texas A&M Univ.*, 343 F.3d at 536.

[12] Plaintiff's letter (through his counsel) merely demonstrates that he made the same arguments in his August 3, 2011 letter that he makes now concerning access and alleged similarities between the works.  Furthermore, Plaintiff only alleges that the new evidence demonstrates access for purposes of the Film, not the Graphic Novel, an untenable position that defeats his claim as to the Graphic Novel because Plaintiff has not alleged that Mr. Oedekerk had any involvement with the Graphic Novel (because he did not).  Furthermore, because Plaintiff admits the Film is based on the Graphic Novel, this allegation necessarily defeats his claim as to the Film, as well.

[13] Furthermore, as Plaintiff himself admits, Mr. Oedekerk has, at most, a story credit for the Film.

# V.
# PRAYER

For all of the above reasons, Defendants respectfully request that the Court dismiss Plaintiff's suit against Defendants for Plaintiff's failure to state a claim upon which relief can be granted.  In the alternative, Defendants respectfully request that the Court find that Defendants are entitled to judgment as a matter of law and dismiss Plaintiff's suit in its entirety with prejudice.

Respectfully submitted,

HAYNES & BOONE, LLP

By:_/s/Catherine L. Robb_____
   Laura Lee Prather
   State Bar No. 16234200
   Catherine L. Robb
   State Bar No. 24007924

600 Congress Avenue, Suite 1300
Austin, TX  78701
Telephone:  (512) 867-8400
Telecopier:  (512) 867-8470

ATTORNEYS FOR PLATINUM STUDIOS, INC., SCOTT MITCHELL ROSENBERG, UNIVERSAL PICTURES, INC., D/B/A UNIVERSAL STUDIOS, and DREAMWORKS II DISTRIBUTION CO., LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on the following parties via e-service and/or certified mail, return receipt requested, this 31st day of July, 2012:

Joshua G. Jones
The Law Office of Joshua G. Jones
401 Congress Avenue, Suite 1540
Austin, TX  78701

_/s/Catherine L. Robb_____
Laura Lee Prather/Catherine L. Robb